# HUBBARD *v.* BERG.

PATENTS; INTERFERENCE; ABANDONMENT; REDUCTION TO PRACTICE; DILIGENCE.

1. In an interference proceeding involving an exceedingly technical invention, the application of one of the parties will be assumed to disclose an operative device, where all of the tribunals of the Patent Office, except the Examiner of Interferences, so held, and error in their conclusions is not apparent, especially where the Primary Examiner allowed the application to go to patent.

2. A finding by both the Examiner of Interference and the Commissioner of Patents in an interference case, that the evidence proved conception on the part of the senior party of the whole of the apparatus in question, is sufficient, as against a contention that he was the inventor of only an unimportant part of the invention, and that some undisclosed party was the inventor of the remainder, where the senior party's evidence establishes a prima facie case, and there is no direct proof to the contrary, or any claim advanced by such third person.

3. Lack of diligence is not chargeable against one of the parties to an interference where he was the first to conceive and the first to reduce to practice.

4. An intention to abandon an invention is not shown by turning the matter over to the patent department of the compay by which the inventor was employed, and to which he had assigned his right, and the dropping of the matter from his mind, although there was a delay of nearly three years in the filing of the application, where he supposed that the patent department would look after the patent, and there is no evidence of any attempt at concealment. (Distinguishing *Mason* v. *Hepburn,* 13 App. D. C. 86.)

5. The burden of proof of intention to abandon an invention is upon the party attempting to show the abandonment.

6. Abandonment of an invention will not be presumed, but must be strictly proven.

7. The fact that one who first conceived an invention, but delayed reducing it to practice, was spurred to activity by knowledge of the entry

of another into the field, does not subordinate the rights of the first
to those of the later inventor, where the latter was not the first
to reduce to practice. (Citing *Warner* v. *Smith*, 13 App. D. C. 111;
*Paul* v. *Johnson*, 23 App. D. C. 187, and *Grabowsky* v. *Gallaher*,
39 App. D. C. 548.)

No. 846. Patent Appeals. Submitted May 13, 1913. Decided June 2,
1913.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This in an appeal by Albert S. Hubbard, from the decision
of the Commissioner of Patents in an interference proceeding
awarding priority of invention to appellee, Ernst J. Berg, the
senior party.

The invention in issue is defined by the Board of Examiners-
in-Chief as follows: "The invention defined by the counts of
this interference is a system of electrical distribution com-
prising a battery and booster working in parallel with a main
source of electrical energy. The first three counts are not specific
as to the character of the main source of electrical energy,
merely defining that element as a source of current, whereas
the remaining counts, 4 to 10, inclusive, specifically define the
main source of current as being a 'rotary converter.' The chief
idea of the invention appears to be the provision of a system
in which the main source of current shall, for light loads, carry
all of the load and charge the storage battery; in which for
normal or immediate loads the main source of current and the
battery and booster shall share the load, and in which for ex-
cessive loads the main source of current shall exclusively carry
the excess, the battery and booster furnishing for the excessive
load, at most, only a predetermined fixed amount of current."

The following counts are sufficient to illustrate the invention
for the purposes of this appeal:

"1. The combination of a source of current having a main

field winding, a direct-current distributing circuit, a storage battery connected across said circuit, a booster in series with said battery, and an auxiliary winding for said source in circuit with said booster, said winding acting to strengthen the main field in case of light load on the distributing circuit, but weakening said field in case of a heavy load on said distributing circuit."

"6. The combination with an alternating-current supply system, of a rotary converter, a direct-current distributing system, a storage battery connected across the direct-current mains, a booster in series with said battery, and an auxiliary field winding on the rotary in circuit with said booster, said winding acting in conjunction with the main field when the battery is charging, and in opposition when the battery is discharging."

"8. The combination with a rotary converter, of a storage battery adapted to operate in parallel therewith, and means for causing the rotary to carry all excess of load above a certain value."

It appears from the record that appellee conceived and disclosed his invention in November, 1904; that, while there is some evidence showing that appellant, Albert S. Hubbard, had a conception of the invention about the same time, he is limited by his preliminary statement to December, 1906, and that neither party reduced to practice except by the filing of their applications for patent,—appellant's on February 10, 1909, and appellee's on September 13, 1907, upon which a patent was inadvertently issued on April 6, 1909.

*Messrs. Kenyon & Kenyon* for the appellant.

*Mr. Thomas J. Johnston* for the appellee.

*Mr. A. G. Davis* also for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant contends that the device disclosed by appellee in 1904 was inoperative, in that the main source of current is a

machine having a rising, instead of a drooping, characteristic, and can therefore avail him nothing. All of the tribunals below, however, held that the invention disclosed was identical with that described in the application and patent. No motion to dissolve the interference was made by appellant, but the Examiner of Interferences of his own motion considered the question of the inoperativeness of the device described in appellee's patent, and decided in favor of appellant. On appeal to the Board of Examiners-in-Chief this decision was unanimously reversed, the board being affirmed on appeal to the Commissioner. This invention involves an extremely technical science, and, at most, error is not so apparent as to warrant us in overturning not only the decisions of the two appellate tribunals of the Patent Office, but also the decision of the Primary Examiner, one skilled in the particular art to which this invention relates, who must have considered appellee's application to disclose an operative device, since he allowed it to go to patent.

It is also contended by counsel for appellant that the testimony on behalf of appellee shows that he was but the inventor of an unimportant portion of the invention, and that some undisclosed third party was the true inventor of the remainder. It is unnecessary here to determine whether or not appellant is in a position to raise this question. The Examiner of Interferences and the Commissioner both held the evidence proved conception on the part of appellee of the whole apparatus embraced in the issue, and the Board of Examiners-in-Chief evidently did not regard the question as of sufficient importance to consider it. An examination of the record convinces us that appellee's testimony establishes a prima facie case, which is sufficient, in the absence of any direct proof to the contrary, or any claim advanced by such third person.

It is further contended by counsel for appellant that appellee had abandoned his invention, and was only spurred to activity when he learned of appellant's entry into the field. Appellee was undoubtedly lacking in diligence, but this is not chargeable against him, since he was the first to conceive and the first to reduce to practice. We agree with the Commissioner that the facts

do not show an intention to abandon the invention. Appellee turned the matter over to the patent department of the General Electric Company, by which he was employed, and to which he had assigned his patent rights. While it is true that he states the matter dropped out of his mind, yet he explains this in the same sentence by the statement that he "knew the patent department would look after their patent situations." Abandonment must be strictly proved, and will never be presumed. The burden of proof is on appellant. A mere delay in the filing of an application of less than three years will not alone amount to abandonment. There seems to have been no attempt at concealment, since the invention was disclosed not only to engineers in the employ of the General Electric Company, but also to others not connected with it.

Ordinarily, the one who is the first to conceive and the first to reduce to practice is regarded as the true inventor. An exception, however, has been made in the case of *Mason v. Hepburn*, 13 App. D. C. 86, relied upon by appellant, where one, although the first to conceive and reduce to practice, by concealing and suppressing his invention, was held to have abandoned it, and to be subordinated to the rights of one who entered the field in good faith as an independent inventor, and was the first to give the completed invention to the world. It is the spirit and intent of the patent laws to reward the one who first gives the public the benefit of his invention in its completed form, and this will be done unless the one first to conceive, but the last to reduce to practice, is not chargeable with delay. But in this case appellant was not the first to give the invention to the world. His application for patent was not filed until nearly a year and a half after appellee's. Had appellant reduced to practice before appellee, there could be no question of his right to a patent, since appellee was not exercising diligence at the time his rival entered the field. On the other hand, had appellee made his application without knowledge of appellant's efforts, he would undoubtedly be entitled to prevail, since he was the first to conceive and the first to reduce to practice, and his want of diligence would become immaterial.

But appellant contends that, where one is only spurred to activity by knowledge of the entry of another into the field, his rights become subordinated to those of the later inventor, even though the latter was not the first to reduce to practice. To sustain this contention, it would be necessary to hold that the rights of the earlier inventor become absolutely forfeited at the date he receives knowledge of the other's subsequent conception, without regard to the diligence of the latter. Thus, one, because of his delay, would be totally deprived of his right to a patent for his invention—the incentive offered by the patent laws to induce him to perfect and disclose it—at a time when there is no assurance that his rival would have a greater regard for the interests of the public. The purpose of the patent laws is to secure to the people at large, in return for a limited monopoly, the fruits of inventive genius, without unreasonable delay. "The interests of the public are therefore the primary consideration, and to these the privileges granted to inventors are secondary and subordinate. * * * On this principle the inventor is required to be diligent in reducing his conception or invention to practice; and it is usually the first who reduces to practice, and not the first who conceives, that is entitled in law to be regarded as the inventor." *Warner* v. *Smith,* 13 App. D. C. 111.

To hold that the earlier inventor's right is merely suspended, to be revived again in case the later is also guilty of laches, is equivalent to a ruling that one is restricted to the date, as his date of conception, when, after delay, he re-enters the field and begins to perfect his invention, and that, from that time, it is a race of diligence between the two. This contention was urged in the case of *Grabowsky* v. *Gallaher,* 39 App. D. C. 548, but was denied upon the authority of the case of *Paul* v. *Johnson,* 23 App. D. C. 187. In the latter case, Paul was the first to conceive, but the last to reduce to practice, being chargeable with negligence. Johnson conceived before Paul re-entered the field, but was also guilty of lack of diligence until after that time. The court said: "It is urged on behalf of Paul, that even though he were lacking in diligence up to

February 28, 1896, the time when he communicated· with
and placed the matter of his claim to invention in the hands
of his counsel, he should, nevertheless, prevail because of the
alleged lack of diligence on the part of Johnson, and from
which time Paul had become active. But this contention, if
sustained, would contravene a well-settled principle of patent
law. As well said by the Commissioner in his opinion, it is
a fundamental principle of patent law that the first to reduce
to practice is prima facie the first inventor and entitled to a
patent. Prior to the act of July 4, 1836, his right was absolute
and subject to no exception. It has been repeatedly held by
the Supreme Court of the United States, that he is to be re-
garded as the inventor and entitled to the patent who first
brought the machine to perfection and made it capable of
useful operation. The first and only exception made to this es-
tablished rule was that made by the act of Congress of July 4,
1836, now embodied in sec. 4920, Revised Statutes of the Unit-
ed States, U. S. Comp. Stat. 1901, p. 3394, wherein it is pro-
vided that anyone sued for infringement of a patent may show
'that he [the plaintiff] had surreptitiously or unjustly obtained
the patent for that which was in fact invented by another, who
was using reasonable diligence in adapting and perfecting the
same.' Nothing is said as to diligence on the part of the first
to reduce to practice, and no lack of diligence can be imputed
to him, since he was in fact the first to give the invention to
the public by a reduction to practice. The principle is well
and clearly stated by Judge Taft, in delivering the opinion of
the circuit court of appeals of the sixth circuit in the case of
*Christie* v. *Seybold,* 5 C. C. A. 33, 6 U. S. App. 520, 55 Fed.
69. In that case the judge said: 'The diligence of the first
reducer to practice is necessarily immaterial. It is not a race
of diligence between the two inventors in the sense that the
right to the patent is to be determined by comparing the dili-
gence of the two, because the first reducer to practice, no mat-
ter what his diligence or want of it, is prior in right, unless the
first conceiver was using reasonable diligence at the time of the
second conception and the first reduction to practice.' " Appel-

lant was neither the first to conceive nor the first to reduce to practice.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.

. A motion for a rehearing was overruled October 8, 1913.